UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JENNY L. GLASCO,<br><br>Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:14-cv-00651-RFB-PAL<br><br>**REPORT OF FINDINGD AND RECOMMENDATION**<br><br>(Mot. To Remand – ECF No. 14)<br>(Cross-Mot. to Affirm – ECF No. 16) |

This matter involves Plaintiff Jenny L. Glasco's appeal and request for judicial review of the Commissioner of Social Security, Defendant Carolyn W. Colvin's final decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33 and claim for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

## BACKGROUND

### I. PROCEDURAL HISTORY

Glasco protectively filed a Title II application for disability and disability insurance benefits on May 16, 2011, alleging a disability date of onset of June 1, 2004. AR 99-105. At the time of her application, she was 36 years old. AR 104-105. Her disability claim was denied initially on July 14, 2011, AR 56-59, and upon reconsideration on November 22, 2011. AR 63. She requested a hearing and a hearing was conducted before Administrative Law Judge ("ALJ") Norman Bennett on October 4, 2012. AR 29-51. At the time of the hearing, Glasco had returned to work. AR 31-32. Counsel therefore asked the ALJ to consider a closed period of disability benefits for the period between December 1, 2007 and April 1, 2012. *Id.* The ALJ issued an unfavorable determination denying disability benefits on October 19, 2012. AR 13-28. Glasco

requested review with the Appeals Council on December 6, 2012. AR 11-12. The Appeals Council denied the request for review on January 16, 2014. AR 5-10.

Glasco filed her Complaint (ECF No. 1) April 29, 2014, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Commissioner filed her Answer (ECF No. 8) August 25, 2014. Glasco filed her Motion for Remand and Supporting Memorandum of Points and Authorities (ECF No. 14) November 5, 2014. The Commissioner filed its Opposition and Memorandum in Support of Cross-Motion for Summary Judgment (ECF Nos. 16, 17) on December 2, 2014. No reply was filed. The court has considered the motion, the Commissioner's Opposition and Cross-Motion for Summary Judgment, and the Administrative Record in this case.

## DISCUSSION

**I.     APPLICABLE LAW**

   **A.     Judicial Review of Disability Determination**

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides that after the Commissioner has held a hearing and rendered a final decision, a disability claimant may seek review of that decision by filing a civil lawsuit in a federal district court in the judicial district where the disability claimant lives. 42 U.S.C. § 405(g). The statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). But the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

whether the Commissioner's findings are supported by substantial evidence, a court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence'." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). When the evidence will support more than one rational interpretation, a court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before a court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent upon an ALJ to make specific findings so that a court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). Mere cursory findings of fact without explicit statements about what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). An ALJ's findings should be comprehensive, analytical, and include a statement explaining the "factual foundations on which the ultimate factual conclusions are based." *Id. See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (an ALJ need not discuss all the evidence in the record, but must explain why significant probative evidence has been rejected).

### B.    Disability Evaluation Process

A claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant must provide specific medical evidence to support his or her claim of disability. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). If a claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to

show that the claimant can perform other substantial gainful work that exists in the national economy. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (noting that a claimant bears the burden of proof until the final step in the evaluation process).

## II.  THE ALJ'S DECISION

An ALJ follows a five-step sequential evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step an ALJ makes a finding of disability or non-disability, no further evaluation is required. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Here, the ALJ followed the five-step sequential evaluation process and issued an unfavorable decision on October 19, 2012 (the "Decision") finding that Glasco was not disabled. AR 16-24. He found that she suffered from the severe impairments of: degenerative disc disease of the cervical spine, and degenerative disc disease of the lumbar spine status post remote surgeries. However, he concluded Glasco had the residual functional capacity to perform a full range of sedentary work, and that during the closed period of disability, she was capable of performing her past relevant work as a secretary, which DOT classifies as SVP 6, sedentary. He therefore denied her application for disability and disability insurance benefits for the closed period of disability alleged between December 1, 2007, and April 1, 2012.

### A.   Step One

The first step of the disability evaluation requires an ALJ to determine whether the claimant is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b). If the claimant is currently engaging in SGA, then a finding of not disabled is made. If the claimant is not engaging in SGA, then the analysis proceeds to the second step. The ALJ found the claimant did not engage in substantial gainful activity during the requested closed period of disability of December 1, 2007, through April 1, 2012. AR 18.

### B.   Step Two

The second step of the disability evaluation addresses whether a claimant has a medically

4

determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, 96-4p.[1] If a claimant does not have a severe medically determinable impairment or combination of impairments, then an ALJ will make a finding that a claimant is not disabled. If a claimant has a severe medically determinable impairment or combination of impairments, then an ALJ's analysis proceeds to the third step.

### 1. Glasco's Severe Impairments

The ALJ found that through the date last insured, Glasco's severe impairments consisted of degenerative disc disease of the cervical spine and degenerative disc disease of the lumbar spine status post remote surgeries. He also found that these impairments, in combination, caused more than minimal limitation to Glasco's ability to engage in work-related activities, and were therefore severe. AR 18.

### 2. Glasco's Non-Severe Impairments

The ALJ found that Glasco suffered from the non-severe impairment of bilateral shoulder osteoarthritis which caused no more than minimal limitation in her ability to engage in work-related activities. *Id.* Glasco underwent a diagnostic and surgical arthroscopy of the right shoulder with arthroscopic subacromial decompression on January 16, 2006, and had a diagnostic and surgical arthroscopy of the right shoulder with capsular labral reconstruction secondary to impingement of the right shoulder on October 15, 2007. *Id*. She recovered from her surgery after four months, which fell short of the durational requirement required for disability benefits which requires a claimant to prove she was unable to engage in substantial gainful activity due to a disability for twelve continuous months. *Id*. He therefore found that her shoulder impairment was

---

[1] SSRs are the SSA's official interpretations of the Act and its regulations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Act and regulations. *See Bray*, 554 F. 3d at 1223 (finding ALJ erred in disregarding SSR 85-41).

5

non-severe because her recovery time was only four months. *Id.*

### C. Step Three

Step three of the disability evaluation requires an ALJ to determine whether a claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, which is commonly referred to as the "Listings." 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826. If a claimant's impairment or combination of impairments meet or equal the criteria of the Listings and meet the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then an ALJ makes a finding of disability. 20 C.F.R. §§ 404.1520(h), 416.920(h). If a claimant's impairment or combination of impairments does not meet or equal the criteria of the Listings or meet the duration requirement, then the analysis proceeds to the next step. The ALJ found that during the requested closed period of disability, Glasco did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

### D. Step Four – Glasco's RFC

The fourth step of the disability evaluation requires an ALJ to determine whether a claimant has the residual functional capacity ("RFC") to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). To answer this question, an ALJ must first determine a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, an ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p, 96-7p. To the extent that a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of a claimant's statements based on a consideration of the entire case record. An ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, and 06-3p.

At Step Four, the ALJ found that Glasco had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a).  AR 19.

### E.      Step Four – Glasco's Ability to Perform her PRW

Once an ALJ has determined a claimant's RFC as an initial consideration at step four, an ALJ utilizes the RFC assessment to determine whether a claimant can perform her past relevant work ("PRW").  20 C.F.R. §§ 404.1520(f), 416.920(f).  PRW means work performed either as a claimant actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established.  In addition, the work must have lasted long enough for a claimant to learn the job and to perform it as SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), 416.965.  If a claimant has the RFC to perform his or her past work, then an ALJ makes a finding that a claimant is not disabled.

At step four in the Decision, the ALJ concluded that during the closed period of disability, Glasco was capable of performing her PRW as a legal secretary, which is classified under DOT 201.362-030 as SVP 6, sedentary. AR 23.  He also found that this work did not require the performance of work-related activities precluded by Glasco's RFC.  *Id*.

### F.      Step Five

Step five of the disability evaluation requires an ALJ to determine whether a claimant is able to do any other work considering her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If she can do other work, then an ALJ makes a finding that a claimant is not disabled.  Although a claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141–42; *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)).

Because the ALJ found that Ms. Glasco was able to perform her PRW during the closed period of disability, he determined she was not disabled.  As such, there was no need for him to proceed to fifth step analysis.

/ / /

7

### III.   THE PARTIES' POSITIONS

#### A.   Glasco's Motion to Reverse and/or Remand

The sole argument on which Glasco bases her Motion to Remand is the ALJ's failure to accept or reject her treating physician's findings. Glasco argues that treating physician Govind Koka, DO, was her treating physician for the relevant period. Dr. Koka completed a medical assessment of ability to do work related questionnaire on October 4, 2012. AR 343-46. Dr. Koka opined that Ms. Glasco could occasionally lift ten pounds; frequently lift less than ten pounds; stand and or walk for a total of less than two hours during an eight-hour work day; sit for less than 6 hours during an eight-hour work day with the ability to periodically alternate between sitting and standing to relieve pain or discomfort; and had limited ability to push/pull with the upper and lower extremities. *Id.* Dr. Koka opined these limitations were present between 2005, through 2012. AR 346.

The motion argues the ALJ's decision denying benefits did not even mention Dr. Koka's opinion. As a treating physician, his opinions were entitled to special weight because he was employed to cure his patient, and therefore has a greater opportunity to know and observe the patient as an individual. Glasco acknowledges that a treating physician's opinion is not necessarily conclusive either as to a physical condition, or the ultimate question of disability. The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and consistent with all evidence in the record. However, if a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. If the treating physician's opinion is controverted by another doctor, it may be rejected only if the ALJ makes sufficient findings establishing specific and legitimate reasons based on the evidence of the record. In this case, the ALJ's decision did not even mention Dr. Koka's opinions, or indicate whether he accepted or rejected them. Thus, the court should credit the opinions of Dr. Koka as true, find Ms. Glasco is disabled as a matter of law, and remand for an award of benefits. In the alternative, the court should remand for further proceedings.

#### B.   The Commissioner's Opposition and Cross-Motion for Summary Judgment

The Commissioner argues the ALJ's decision was supported by substantial evidence and

free of legal error. Although Plaintiff argues the ALJ improperly ignored the opinions of her treating physician, Dr. Koka, the motion fails to address the ALJ's reasoning for finding Glasco was not disabled. The Commissioner contends that the ALJ reviewed all of the medical evidence in the record which consisted primarily of surgeries and conservative follow up treatment. The ALJ found that the objective medical evidence showed Glasco recovered from her lumbar surgery after nine months. An EMG study showed that her cervical radiculopathy lasted only four to nine months. He properly concluded that the recovery time on her impairments did not exceed twelve continuous months, and therefore, did not satisfy the one-year durational requirement for establishing disability under the Social Security Act.

The Commissioner maintains that the ALJ did not ignore the doctor's opinion. Rather, although he did not specifically identify him by name, reversal is not required. The ALJ is not required to comment on every piece of evidence in the record. What is important is that the ALJ discussed the medical evidence relied on by Dr. Koka to provide his opinion. The Commissioner requests that the court uphold the ALJ's decision as supported by substantial evidence and free of reversible error. However, if the court concludes the opinion is not supported by substantial evidence or free of reversible error, the court should remand for further proceedings. This is not such an unusual case that merits the discretionary decision to remand for an award of benefits.

## IV. THE ADMINISTRATIVE RECORD

### A. The Administrative Hearing

Glasco appeared represented by her counsel, Attorney Charles Weiser. Mr. Weiser stated his client was disabled from two accidents, one that occurred in June of 2004, and second, a slip-and-fall in 2009. At the time of the administrative hearing, she had returned to work. AR 31-32. As a result, counsel asked the ALJ to consider a closed period of disability benefits for the period of December 1, 2007, to April 1, 2012. *Id*. Mr. Weiser stated that disability from the date last insured was supported by a history of four surgeries, a cervical fusion in 2006, a lumbar fusion in 2009, a right orthoscopic shoulder surgery in 2006, and a right shoulder surgery in 2007. AR 32.

Ms. Glasco testified that she was 36 years old at the time of the hearing. She was 5'1" and weighed 125 pounds. AR 33. She had three children under the age of 18—16, 14 and 7. AR 33-

34. Her oldest child was 19 and helped around the house. AR 34. She went back to work in April of 2012 doing office work three to four hours a week, one day a week. AR 35. Her prior employment history consisted of positions as a secretary, owning a cleaning company, and working for a roofing company. AR 35-36. She did not work at all from June 2004, to April 2012. AR 36. She stopped working after a car wreck on May 27, 2004. *Id.* She injured both shoulders, her neck, and low back in the accident. *Id.* She had surgery in 2004. *Id.* She received treatment for her neck from the time of the car accident. AR 36-37. The surgery on her back was a level 2 cervical fusion at C5/C6, and C6/C7 in October 2006. AR 37. She had several rounds of injections following her neck surgery. Her fusion was deemed successful, 90% "until I fell." *Id.* She fell at Sunrise Hospital on October 2, 2009. AR 37-38. She reinjured her right shoulder, tore the meniscus in her left knee, reinjured her neck, and had more rounds of epidural injections. AR 38.

She had a lumbar spine fusion done in November 2009. *Id.* MRIs performed in 2008 and 2009 showed herniated disks at L4/L5 and annular tears, as well as bulges at L4/L5, and compression on the nerve roots. *Id.* She could not walk, her legs were always burning, she felt like she was in the first stages of child birth, and took a lot of pain meds. *Id.* She related all of these symptoms to the accident of June 2004. AR 39.

She had right shoulder surgery in 2006, and a follow up surgery in October or November 2007. *Id.* The first surgery was orthoscopic, just trying to clean out the area; however, it didn't work. *Id.* The second surgery was a capsulary repair where the tendons were pulled through her bones. *Id.*

With respect to her shoulder injuries, she did not get treatment for the left shoulder from the car accident. *Id.* However, after the fall at Sunrise, a new tear was located. AR 39-40. She has received treatment from 2012, until the present consisting of epidural injections, physical therapy, massage, and in the beginning, chiropractic in addition to "a lot of stuff and pain management." AR 40. She took six Oxycodone 15s a day, two Motrin 800s a day, and a Valium 10 mg in the morning. *Id.* She took those medications from 2012, until she "detoxed on my own." *Id.* From 2007 until she detoxed, she took 6 Oxycodones a day, and prior to that was taking Norco 10 mg, 8 a day. *Id.* The medications were prescribed by a doctor and monitored. *Id.*

10

The summer before the hearing, she tried to stop taking medications, but testified "it's not working." AR 41. Her 19-year-old son and 17-year-old daughter do dinner, fold the laundry, clean the house, and she sits. She gets migraines that make her feel like she wants to throw up stemming from her neck and arms from sitting. *Id.*

When asked how she spent her days from 2007 until 2012, she responded "in sweats, eating pain pills, trying to function." AR 41. She did little or nothing. AR 42. From 2007, to April 2012, she was able to sit comfortably for five to eight minutes before radiating pain to her shoulder blades and the back of her head would go down to her right leg. AR 42. She was unable to stand comfortably for more than five to eight minutes. *Id.* She was not able to walk. *Id.* The only position she was really comfortable in was a recliner, and she still slept sitting up because she could not lay flat. AR 43. She had difficulty falling asleep because she could not get comfortable. *Id.* She never had much luck with epidural injections beginning early on through 2011. *Id.*

She had surgery in November 2007, and testified she was in a sling for a while and then did physical therapy. AR 43-44. She moved to Arizona and found a physical therapist and did physical therapy for approximately four months. AR 44. The 2009 lumbar surgery was a "nightmare." *Id.* It took a total of nine months to recover from that surgery. *Id.* At the time of the administrative hearing, she had a right shoulder tear from a fall at Sunrise Hospital in 2009. AR 45. This fall occurred approximately a month before her lumbar surgery. *Id.* Until these new developments with her shoulder [the Sunrise Hospital fall in 2009] her shoulders "were taken care of in 2007." AR 46. Since the fall in 2009, her right shoulder is now worse. *Id.*

Vocational expert Jack Dymond[2] testified that Glasco's past relevant work was as a secretary, classified as sedentary work, SVP 6 under the DOT. AR 47. She was also an owner/manager of custodial services classified as light, SVP 8 under the DOT. *Id.* Glasco was asked what she was doing in 2001 to 2012 for work and testified she was working as a secretary at a roofing company. AR 47-48. The ALJ inquired whether there were any opinions in the record about residual functional capacity. AR 48. Counsel for Glasco responded "nothing specific pertaining to an RFC," and stated "if we're getting one from a treating physician, that would also

---

[2] Mr. Dymond's name was misspelled in the transcript of the hearing as "Diamond."

11

be pretty much irrelevant since we're going back in time." *Id.* The attorney was asked what his argument was for less than sedentary work for the period of closed disability, counsel responded "that the recuperation period would have literally limited her to being in bed for the majority of the day and prevented her from at least—aside from the fact that she'd probably be limited to less than sedentary due to the fact that it took her so long to recuperate and the obvious proof that she had the continuing effects is the continuous treatment from the treating physicians, as well as the epidural injections all the way through 2011 to the present time." AR 49-50. Additionally, Counsel stated that even if Glasco was capable of working again, "it'd more of a vocational expert issue, but I do not believe because of her physical symptoms she would have been out of work for more than two days per month caring for her physical problems." AR 50.

**B.      Treatment Records**

The Administrative Record contains treatment records consisting of:

- Hospital Records/Operative Report dated October 6, 2006, from Jaswinder Grover M.D./St. Rose Dominican Hospital-Sienna. AR 147-148.
- An August 27, 2007 MRI of the lumbar spine from Govind Koka, M.D. AR 149
- A CT exam of the lumbar spine post discogram, dated September 6, 2008, from Hans J. Rosler, M.D. AR 150.
- An x-ray of the chest dated January 4, 2009, from Govind Koka, M.D. AR 151.
- Miscellaneous lab reports dated July 22, 2009, from Desert Institute of Spine Care. AR 152-153.
- An MRI arthrogram of the right shoulder dated February 9, 2010, from Michael Crovetti, Jr., DO. AR 154-55.
- A progress report/discharge summary dated February 10, 2010, from Spine & Sports Rehabilitation. AR 156.
- Miscellaneous labs dated November 6, 2009, to June 2, 2010, from Primary Care Consultants. AR 157-160.
- An initial consultation note dated July 19, 2010, from Michael Prater, M.D./Advanced Pain Consultants. AR 161-163.

- Office Treatment Records/Operative Report dated January 31, 2006, to September 15, 2010, from Jorg Rossler, M.D./Nevada Spine Clinic. AR 164-179.
- Consultation dated September 29, 2010, to February 17, 2011, from Joseph Schifini, M.D./Institute of Orthopaedic Surgery. AR 180-188.
- Office Treatment Records dated July 16, 2009, April 21, 2011, from Andrew Cash, M.D. AR 189-258.
- A Neurology Evaluation/EMG/NCV Study dated August 8, 2006, to May 16, 2011, from Russell Shah, M.D. AR 259-279.
- A Surgical Report dated January 16, 2011, from Seven Hills Surgery Center/Dr. Crovetti. AR 286-87.
- A Medical Evaluation dated June 13, 2016, from The Center for Diseases and Surgery of the Spine. AR 288-291.
- A Surgical Report dated October 15, 2007, from Seven Hills Surgery Center-Dr. Crovetti. AR 292-293.
- An Operative Report dated August 14, 2007, to September 6, 2008, from the Center for Spine & Special Surgery. AR 294-300.
- An Operative Report dated November 20, 2009, from Dr. Andrew Cash. AR 301-309.
- A Surgical Report dated November 20, 2009, to November 24, 2009, from St. Rose Dominican Hospital. AR 310-320.
- Consultation and Surgical Reports dated September 26, 2005, to February 8, 2011, from Institute of Orthopaedic Surgery-Dr. Joseph Schifini. AR 321-342.

After the administrative hearing, counsel submitted a representative letter attaching a Medical Assessment Physical Ability-Work Related Activities report dated October 4, 2010, from Govind Koka, DO. AR 343-346. The cover letter from Attorney Charles Weiser stated that at the hearing, the ALJ noted that the record was devoid of functional assessment by a physician who had been a treating claimant since Glasco's first motor vehicle accident in 2005. AR 343 Therefore, after the hearing, counsel contact Dr. Govind Koka, who had been attending the claimant since

13

2005. The doctor completed and returned the medical assessment questionnaire that was attached to the letter. AR 344-46.

V.     **ANALYSIS AND FINDINGS**

Glasco's motion to remand asserts the ALJ committed reversible error by failing to consider the opinions of treating physician Dr. Govind Koka, specifically, the medical assessment form. However, Dr. Koka did not provide this medical assessment until after the administrative hearing at the request of counsel. The post-hearing medical assessment is a check-the-box form with some handwritten notations supporting the findings. Dr. Koka's post hearing assessment opined that Glasco could occasionally lift and/or carry 10 pounds "for a total, of from very little up to one-third of an 8-hour work day." AR 344. A handwritten notation indicated that this finding was supported by an MRI report and decreased range of motion, cervical and lumbar fusions, and a right shoulder fracture. *Id.* She could frequently lift or carry for a total of from one-third to two-thirds of an 8-hour work day, a maximum of less than 10 pounds. *Id.* These findings were supported by an MRI report, decreased range of motion, cervical and lumbar fusions and right shoulder fracture. *Id.* He opined Glasco could stand or walk less than 2 hours in an 8-hour work day, sit with normal breaks for less than 6 hours in an 8-hour work day with periodically alternating sitting and standing to relieve pain and discomfort. AR 345. Boxes were checked indicating her abilities to sit and/or pull were limited in upper and lower extremities. *Id.* However, the nature and degree of the limitations were not described. *Id.* The last page of the form contains a notation "patient has undergone continuous treatment from 2005-present." AR 346. The restrictions on the form were noted to have been present from "2005 to present (2012)". *Id.* The report is dated October 4, 2012. However, none of Dr. Koka's treatment records indicate Glasco was unable to engage in substantial gainful activity for a continuous twelve-month period during the closed period of disability alleged.

The ALJ's opinion did not mention Dr. Koka, or any other of Glasco's treating physicians by name. However, his opinion systematically reviewed and discussed Glasco's treatment history and medical records that were part of the administrative record. His decision that Glasco was not disabled due to her severe and non-severe medically determinable impairments was based

primarily on his finding that none of Glasco's impairments met the durational requirements for disability under the Social Security Act. That is, the ALJ found that the objective medical evidence showed that her recovery time from her various surgeries was a maximum of 9 months, rather than the 12 continuous months required by the Act for a finding of disability. The ALJ noted that other than her surgeries, Glasco had received minimal treatment and had no frequent consistent treatment history. AR 19. This contradicted her representative's theory of the case. *Id.* The ALJ found that the medical records from her treating physicians indicated that her recovery time from her lumbar fusion surgery was only 9 months. *Id.* An EMG study showed that her cervical radiculopathy lasted only 4 to 9 months. *Id.* This fell short of the durational requirement, which requires an individual to be unable to engage in substantial gainful activity for 12 continuous months due to a disability before eligible for disability benefits. AR 19-20.

The ALJ correctly noted that there were very few treatment records after 2009 which, coupled with the objective medical evidence in the AR, suggested that her symptoms were under control. AR 20. She had been treated with epidural steroid injections, but there was no evidence that she had received a steroid injection since February 2011, and only a few records showing injections between the end of 2009 and February 2011. *Id.*

The ALJ noted that although Glasco had a history of degenerative disc disease of the lumbar spine, on August 27, 2007, an MRI showed only mild degenerative changes. *Id.* A CT scan of the lumbar spine on September 6, 2008 after a discogram, showed normal nuclecogram at L1 through L3 and L3 through L4, a right posterolateral annual tear and disc bulges at L4 though L5, a central disc herniation and partial thickness annual tear at L5 through S1, that produced a slight impression on the S1 nerve root in the lateral recess. *Id.*

The decision also pointed out that Glasco underwent another MRI of the lumbar spine on July 29, 2008. *Id.* The impression was mild desiccation and annular bulging at L4 through L5 with no significant spinal canal or foraminal stenosis seen. *Id.* A July 23, 2009 X Ray of the lumbar spine was within normal limits. AR 21. After her 2009 lumbar surgery a July 1, 2010 MRI of the cervical spine showed evidence of the prior cervical fusion but was otherwise normal. *Id.* On September 29, 2010 she was referred by her treating physician to a consultant for neck pain,

but exhibited no obvious pain behavior. AR 22. On examination she had a full range of motion of the bilateral upper extremities, and normal muscle strength/tone and grip strength of her biceps/triceps and deltoid. *Id.* Deep tendon reflexes were normal as well as sensation, coordination, and joint stability. *Id*.

The ALJ's decision systematically went through the entire medical record and the court finds he accurately reported the findings made by the various treating physicians, as well as the diagnostic tests and studies that were conducted. Although he did not mention the names of the various treating physicians, providers and diagnosticians, his opinion accurately reflected their findings. It is important to point out that Glasco testified at the administrative hearing that she recovered from her 2009 lumbar spine surgery in nine months. AR 44. The ALJ also correctly pointed out that Glasco was a no call/no show for a follow up appointment following bilateral C6-7 epidural steroid injections on February 17, 2011 (AR 180), and cancelled an appointment for a January 25, 2011 cervical injection the morning of the procedure. AR 182. He found this showed her pain was not as severe as she claimed, or she would have kept her appointments to get the benefits of potential pain relief. AR 23.

The court has thoroughly reviewed the AR and finds that the treatment records of her own treating physicians, which the ALJ comprehensively reviewed and discussed, support the ALJ's determination Glasco did not establish she was disabled and unable to engage in substantial gainful activity for a continuous twelve-month period between December 1, 2007 and April 1, 2012. To the contrary, the records of the treating physician who saw her after her lumbar surgery indicate she was capable of returning to work as early as February 11, 2010. For example, Dr. Cash was one of the 2 surgeons who performed the lumbar discectomy and fusion on November 20, 2009 following Glasco's fall at Sunrise Hospital on October 4, 2009. He saw Glasco in post-operative follow up appointments. A February 11, 2010 record of a post-op visit stated "patient may return to light duty." AR 219. In a subsequent visit on May 13, 2010 Dr. Cash stated "patient may return to full duty." AR 219.

## **CONCLUSION**

Having carefully reviewed the record as a whole, the court finds the ALJ's decision is

supported by substantial evidence, and that the ALJ did not commit reversible error in finding Glaso did not meet her burden of establishing she was disabled under the Social Security Act. The ALJ correctly found that the medical treatment records did not support a finding that Glasco was unable to engage in substantial gainful activity due to a disability for 12 continuous months for the closed period of disability alleged. Although Dr. Koka's post hearing check-the-box form suggested she had work-related restrictions, nothing in the treatment records in the Administrative Record support a finding that Glasco was unable to perform her past relevant work as a secretary, which is classified under the DOT as a SVP 6, sedentary.

For these reasons,

**IT IS RECOMMENDED:**

1. Glasco's Motion to Reverse/Remand (ECF No. 14) be **DENIED**.

2. The Commissioner's Cross-Motion to Affirm (ECF No. 16) be **GRANTED**.

Dated this 19th day of October, 2016.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

17